IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COURTNEY LANCASTER,                  *
Individually, and as Mother and Next
Friend of her Minor Child, Student Doe,   *

    Plaintiffs,                       *
                                Civil Action No. GLR-20-3685
v.                                   *

BOARD OF EDUCATION OF                *
BALTIMORE COUNTY, et al.,
                          *

    Defendants.
                    ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Board of Education of Baltimore County (the "Board"), Jason Feiler, Lauren Stuart, Kelly Rudd Saffran, and Nina Martin's (the "individual Board Defendants") (collectively, the "Board Defendants") Motion for Judgment on the Pleadings (ECF No. 32), and Defendants Baltimore County, Maryland (the "County"), Baltimore County Police Department ("BCPD"), and Officer Jennifer Peach's ("Officer Peach") (collectively, the "County Defendants") Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 33). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motions in part and deny the Motions in part without prejudice.

## I.    BACKGROUND[1]

### A.    <u>Factual Background</u>

This action arises from a series of incidents relating to a virtual classroom session attended by Plaintiff Student Doe ("Student Doe"),[2] an elementary school student. Student Doe's teacher believed he had weapons displayed in the background of his video feed, and this belief ultimately resulted in a police search of Student Doe's home. Student Doe's mother, Plaintiff Courtney Lancaster, filed this lawsuit alleging that Defendants' actions violated various state tort laws and statutes and federal and state constitutional provisions.

At all relevant times, Student Doe was a fifth-grade student at Seneca Elementary School ("Seneca"). (Am. Compl. ¶¶ 24, 43, ECF No. 27). He had attended Seneca for five years. (<u>Id.</u> ¶ 96). Student Doe's mother, Courtney Lancaster, was an active member of the PTA. (<u>Id.</u>). As a result of the COVID-19 pandemic, Seneca students turned to remote learning classes using Google Meet. (<u>Id.</u> ¶¶ 33–34). The Board "never requested the consent of any parents . . . for their [children] to participate in 'remote learning' via 'Google Meet,'" nor did it request parental consent to view into students' homes. (<u>Id.</u> ¶¶ 35–36). Additionally, the Board did not restrict who could access the Google Meet. (<u>Id.</u> ¶ 37). Furthermore, the Board did not implement policies regarding the setting in which a student

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint and accepts them as true. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).

[2] Student Doe is a pseudonym. As this Court has held, "it is undoubtedly appropriate to allow [a minor child] to proceed anonymously." <u>L.J. v. Balt. Curriculum Project</u>, 514 F.Supp.3d 707, 712 n.1 (D.Md. 2021) (citing Fed.R.Civ.P. 5.2(a)(3)).

could attend class, except that as part of the class attendance policy, the Board required that cameras be on at all times during class. (Id. ¶¶ 37, 129).

On June 1, 2020, Student Doe was attending a remote learning class session using Google Meet from Lancaster's house in Rosedale, Maryland. (Id. ¶ 42, 45). At 10:56 a.m., "[u]nbeknownst to Student Doe," his background was partially visible to his teacher, Nina Martin. (Id. ¶¶ 44, 46). In Student Doe's background were "two archery bows, two bundled sets of arrows, [and] two BB guns." (Id. ¶ 47). The two BB guns were a "'Red Rider' BB gun, and an Airsoft Gun." (Id.). The Airsoft gun had an orange muzzle on it, as required by law. (Id. ¶¶ 48, 61). When Martin noticed the BB gun and the Airsoft gun, she requested Student Doe change his background. (Id. ¶¶ 52–54). Student Doe complied, though he did not understand why his teacher made the request. (Id. ¶ 55). Prior to the request, Student Doe never mentioned or handled the toys in question, nor did he threaten anyone with them. (Id. ¶ 56).

Screenshots were taken of Student Doe without Student Doe or Lancaster's knowledge or consent.[3] (Id. ¶¶ 57, 59). Martin reported Student Doe to the Seneca Elementary school administration, who in turn presented the screenshots to Kelly Rudd[4] Saffran, the school's assigned Department of School Safety manager. (Id. ¶ 65–66). Approximately thirty minutes after the screenshots were taken, Vice Principal Lauren

---

[3] While Plaintiffs imply that one of the Individual Board Defendants took the screenshots of Student Doe's video feed, Plaintiffs do not specify which Defendant. (Am. Compl. ¶¶ 57–58).

[4] Saffran is sometimes referred to in the Amended Complaint as "Kelly Rudd Saffran," and other times as "Kelly Ruff Saffran." The Court acknowledges that these references are to the same person, whom the Court will hereafter refer to as "Saffran."

Stuart called Student Doe's father to ascertain where Student Doe was. (Id. ¶ 68). Stuart lied to Student Doe's father and said the purpose of asking for Student Doe's location was because Student Doe was having a network connectivity issue. (Id. ¶ 69). Student Doe's father responded that Student Doe was at his mother's house. (Id. ¶ 70). Lancaster never received a call from Stuart or any other Board Defendant. (Id. ¶ 71). At 11:31 a.m., "Principal Jason Feiler called the Baltimore County Police Department" and told them that there was a "'shotgun' or a 'rifle'" in Student Doe's background. (Id. ¶¶ 73–74). During the phone call, Feiler acknowledged the student was not on school property; stated that students must still follow the same rules that they would have had they been in the building;[5] stated that the object "did not have a 'Nerf gun look to it'"; shared the assumption that the weapons belonged to Lancaster; and lied to the police by stating that Student Doe ducked down so everyone in the classroom could view his background. (Id. ¶¶ 75–78).

At 11:49 a.m., Officer Kevin Thomas[6] arrived at Lancaster's home, described to Lancaster that there was a report of weapons in the home, and asked for permission to enter. (Id. ¶¶ 81–84). Body camera footage shows that both Lancaster and Officer Thomas were surprised that Officer Thomas was called to the home. (Id. ¶ 82). Lancaster shared with Officer Thomas that her son had toy guns, and Officer Thomas, with Lancaster's

---

[5] Plaintiffs maintain that there was no such school "[p]olicy, [r]ule, or [a]uthority" that existed "as a basis for [this] false statement." (Am. Compl. ¶ 75).

[6] Plaintiffs are not currently alleging any wrongdoing against Officer Thomas or any of the responding officers. (Am. Compl. ¶ 81 n.1). Plaintiffs' current causes of action against the Police Defendants "relate to the actions of the Police Defendants after Ms. Lancaster's encounter with Officer Thomas terminated." (Id.).

permission, went upstairs to take a look. (Id. ¶¶ 86–87). Officer Thomas immediately recognized the BB gun and the Airsoft gun to be toys, noted that they "were not loaded with any projectiles, which were safely stored in another location," and "expressed his satisfaction that [Student Doe and Lancaster] were aware of firearm safety and that these toys were safely stored." (Id. ¶¶ 86, 91–92). Officer Thomas put Student Doe, who had been frightened, at ease and apologized for bothering Lancaster and Student Doe. (Id. ¶¶ 88–89). Shortly afterwards, a second officer arrived and "deferred to Officer Thomas' judgment that the call was meritless," therefore finding that there were no violations of law at Plaintiffs' home. (Id. ¶¶ 93–94).

At 12:20 p.m., Lancaster spoke with Laura Herzog, Student Doe's homeroom teacher. (Id. ¶ 97). Herzog stated that a parent noticed the "guns" and Martin reported the incident to the school administration. (Id.). This was the first time that Lancaster had heard this version of events. (Id.). At 12:45 p.m., Lancaster spoke with Feiler and Stuart, who relayed that the school safety officer made a determination that the toys were weapons. (Id. ¶ 98). Feiler and Stuart did not share with Lancaster that the school had called Student Doe's father, nor did they share the allegation that Student Doe had ducked to provide a better view of the "weapons." (Id.).

The following day, on June 2, 2020, Lancaster emailed the Executive Director of School Support for Seneca Elementary, Jane Licther, and Superintendent Dr. Darryl L. Williams. (Id. ¶ 99). Licther, in response, held a conference call with Lancaster and Student Doe's father, in which she acknowledged that the only evidence of the incident were the photographs taken of Student Doe, which she said would be released to them. (Id. ¶ 100).

One June 3, 2020, Lancaster spoke with Saffran. (Id. ¶ 101). Saffran relayed that she had firearms training from the Baltimore County Police but did not state how she identified the toys as guns. (Id.). Further, she stated to Lancaster and Student Doe's father that the photographs would be released to them, although she refused to turn them over herself. (Id.).

Between June 12 and 13, 2020, "Fox 45 Baltimore ('WBFF') ran a follow-up story about the Occurrence at least 4 times." (Id. ¶ 104). Prior to the follow-up story, "Officer Jennifer Peach of the Baltimore County Police Department delivered a falsified report of the incident to Fox 45 with the knowledge that the report was false . . . and had nothing to do with the June 1, 2020, incident." (Id. ¶ 105). Although no report regarding the incident was ever completed, Peach shared a falsified report with Fox 45 Baltimore which stated: "Police report: suspicious condition. Principal (she) received e-mail from teacher about child playing with toy gun during virtual class. Teacher told child he would be removed from class if he would not stop playing with it." (Id. ¶¶ 106–07). According to Plaintiffs, however, "the principal was male, there was a verbal report (not an e-mail), and no one (even falsely) accused Student Doe of playing with a toy gun. Finally, Student Doe was unaware that there was any issue at all – let alone a teach[er] telling him that he would be removed from class for playing with a gun." (Id. ¶ 108). Officer Peach appeared on camera at Fox 45 Baltimore "after the description of the false report [and] attempt[ed] to justify the police presence at the Lancaster home on June 1, 2020" and provided a false statement without acknowledging that the "underlying basis of her justification was based on falsehoods." (Id. ¶ 109).

To gather additional information about these events, Plaintiffs sent a request to Board and Police Defendants under the Maryland Public Information Act, Md. Code Ann., Gen. Prov. § 4-101 et seq. ("PIA"). (Id. ¶ 131). Defendants denied Plaintiff's request. (Id. ¶¶ 132–45). Plaintiffs assert that due to the events underlying this lawsuit, they "still experience the emotional and psychological effects of the betrayal by the School System, the infringement upon their privacy and Constitutional Rights, and the reputational harm, harm to standing in the community, personal humiliation, and mental anguish caused by the defamatory statements casting them as liars and criminals." (Id. ¶ 146).

## B.    **Procedural History**

Plaintiffs filed this lawsuit in the Circuit Court for Baltimore County, Maryland on November 6, 2020. (ECF No. 15). On December 10, 2020, Board Defendants filed an Answer in that court. (ECF No. 17). On December 18, 2020, Defendants removed the case to this Court. (ECF No. 1). Following removal, Board Defendants filed a Motion for Judgment on the Pleadings on December 22, 2020. (ECF No. 14). County Defendants filed a Motion to Dismiss Plaintiffs' Complaint on December 28, 2020. (ECF No. 20). Plaintiffs responded to the Motions by filing an Amended Complaint on January 12, 2021. (ECF No. 27). The Court then denied both pending Motions without prejudice as moot on January 15, 2021. (ECF No. 31).

In their sixteen-count Amended Complaint, Plaintiffs allege two counts against only the Board Defendants: Violation of Maryland Wiretapping & Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc. § 10-401 et seq. (Count VII); and Violation of Maryland Camera Surveillance Act, Md. Code Ann., Crim. Law § 3-903 (Count VIII). (Am. Compl.

¶¶ 231–46). Plaintiffs allege the remaining fourteen counts against all Defendants: Negligence (Count I); Negligent Training and Supervision (Count II); Invasion of Privacy (Intrusion Upon Seclusion) (Count III); Invasion of Privacy (Unreasonable Publicity) (Count IV); Invasion of Privacy (False Light) (Count V); Defamation (Count VI); Gross Negligence (Count IX); Breach of Fiduciary Duty (Count X); Violation of Rights Secured Under Article 24 of the Maryland Declaration of Rights (Count XI); Violation of Rights Secured Under Article 26 of the Maryland Declaration of Rights (Count XII); Violation of Rights Secured Under 42 U.S.C.A. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution (Count XIII); Violation of Rights Secured Under 42 U.S.C.A. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution (Count XIV); Violation of Rights Secured Under 42 U.S.C.A. § 1983 and the Second and Fourteenth Amendments to the United States Constitution (Count XV); and Violation of Rights Secured Under the Maryland Public Information Act, Md. Code Ann., Gen. Prov. § 4-101 et seq. (Count XVI). (Id. ¶¶ 185–230, 247–340). Plaintiffs seek compensatory damages, punitive damages, statutory and actual damages, attorneys' fees and costs, pre- and post-judgment interest, and injunctive relief. (Id. at 40–41).

On January 15, 2021, Board Defendants filed a renewed Motion for Judgment on the Pleadings. (ECF No. 32). On January 26, 2021, County Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint. (ECF No. 33). Plaintiffs filed Oppositions to both Motions on February 16, 2021. (ECF Nos. 40, 41). Board Defendants filed a Reply on February 26, 2021, (ECF No. 44), and County Defendants filed their Reply on March 12, 2021, (ECF No. 47).

## II.   DISCUSSION

**A.**   **Standard of Review**

**1.**   **Rule 12(b)(6) Standard**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268

9

(1994); <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

### 2.    Rule 12(c) Standard

Rule 12(c) permits a party to move for judgment on the pleadings at any time after the pleadings are closed, so long as the motion comes "early enough to not delay trial." Fed.R.Civ.P. 12(c). The pleadings are closed when the defendant files an answer. <u>See</u> <u>Burbach Broad. Co. of Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 405 (4th Cir. 2002). Defendants bringing such a motion may assert that the plaintiff has failed to state a claim or that she has failed to join a required party under Rule 19(b). Fed.R.Civ.P. 12(h)(2).

Here, Board Defendants assert that Plaintiffs have failed to state a claim. A Rule 12(c) motion for failure to state a claim is generally governed by the same standard as Rule 12(b)(6) motions to dismiss. <u>Burbach Broad. Co.</u>, 278 F.3d at 406. Thus, "the factual allegations of the complaint are taken as true, but those of the answer are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." <u>Pledger v. N.C. Dep't of Health & Hum. Servs., Dorothea Dix Hosp.</u>, 7 F.Supp.2d 705, 707 (E.D.N.C. 1998) (citation omitted). Any document attached as an "exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Like a Rule 12(b)(6) motion, a Rule 12(c) motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." <u>Drager v.</u>

PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (citing Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012)). Thus, the Court will only grant a motion for judgment on the pleadings "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." MCG, Inc. v. MGSJ Holdings, Inc., 648 F.App'x 372, 373 (4th Cir. 2016) (quoting Edwards, 178 F.3d at 244).

**B.    Analysis**

**1.    The BCPD is not sui juris.**

Before assessing the merits of each claim, the Court will address County Defendants' argument that the Baltimore County Police Department ("BCPD") is not sui juris, i.e., not a legal entity which can be sued individually apart from Baltimore County. (County Defs.' Mem. Law Supp. Mot. Dismiss Pls.' Compl. ["County Mot."] at 10, ECF No. 33-2). The Fourth Circuit has found that "absent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 393 (4th Cir. 2014) (citing Boyer v. State, 594 A.2d 121, 128 n.9 (Md. 1991)). Section 3-2-1301 of the Baltimore County Code established that "[t]here is a Police Department in the county." As the County has designated the BCPD as a department— and not as an agency—it cannot be sued. Indeed, § 1-103 of the Baltimore County Charter plainly states that "Baltimore County, Maryland" shall be the designee "in all actions and proceedings touching its rights, powers, properties, liabilities and duties."

11

This Court has repeatedly held that the BCPD is not <u>sui juris</u>. <u>See, e.g.</u>, <u>Borkowski v. Baltimore Cnty.</u>, 414 F.Supp.3d 788, 804 (D.Md. 2019); <u>James v. Frederick Cnty. Pub. Schs.</u>, 441 F.Supp.2d 755, 758 (D.Md. 2006); <u>Strebeck v. Balt. Cnty. Police Dep't,</u> No. JFM-05-2580, 2005 WL 2897932, at *1 (D.Md. Oct. 17, 2005). The Court sees no reason to disturb that holding in this action. Accordingly, the Court will dismiss Plaintiffs' claims against BCPD and dismiss BCPD as a Defendant in this action.

### 2. Constitutional Claims (Counts XI, XII, XIII, XIV, XV) (All Defendants)

Plaintiffs assert claims against all Defendants under 42 U.S.C. § 1983 for violation of Student Doe's rights guaranteed by the Second, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution (Counts XIII–XV) and Articles 24 and 26 of the Maryland Declaration of Rights (Counts XI–XII).[7] "Articles 24 and 26 of Maryland Declaration of Rights are the state constitutional counterparts to the Fourteenth and Fourth Amendments, respectively." <u>Meyers v. Balt. Cnty.</u>, 981 F.Supp.2d 422, 430 (D.Md. 2013) (citations omitted). These state provisions are interpreted in light of their federal analogs, meaning a given constitutional claim is analyzed the same whether it is brought under an Article of the Maryland Constitution or an Amendment to the U.S. Constitution. <u>Henry v.</u>

---

[7] Plaintiffs style Count XIV of the Amended Complaint as a claim for violation of Student Doe's Fifth and Fourteenth Amendment rights. "Due process claims under the Fifth Amendment apply to federal actors, whereas due process claims under the Fourteenth Amendment apply to state actors." <u>White v. City of Greensboro</u>, 408 F.Supp.3d 677, 691 (M.D.N.C. 2019) (citing <u>United States v. Al-Hamdi</u>, 356 F.3d 564, 573 n.11 (4th Cir. 2004)). Importantly, however, "[t]he standard of review for the two types of due process challenges does not differ." <u>Id.</u> The Court therefore construes Plaintiffs' Fifth Amendment claim as a claim under the Fourteenth Amendment's due process clause.

Purnell, 501 F.3d 374, 382 n.10 (4th Cir. 2007) (holding that an excessive force claim is analyzed the same whether it is brought under the Fourth Amendment or Article 26 of the Maryland Constitution). Accordingly, the Court will analyze Plaintiffs' federal constitutional claims together with their claims under the Maryland Declaration of Rights. At bottom, the Court finds that Plaintiffs have failed to state a claim for which relief may be granted as to any of their constitutional claims against any Defendants.

### a.   Board Defendants

### i.   Board Defendants in their Official Capacities

Board Defendants argue as an initial matter that the Board and the Individual Board Defendants in their official capacities are not subject to suit under 42 U.S.C. § 1983. The Court agrees. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the other party[.]" Id. (emphasis added). As the Supreme Court has made clear, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Maryland courts "have long considered county school boards to be State agencies rather than independent, local bodies." Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert, 973 A.2d 233, 236 (Md. 2009) (citations omitted).

For their part, Plaintiffs argue that pursuant to certain factors previously set forth by this Court, Board Defendants do not qualify for Eleventh Amendment immunity. (Pls.' Resp. Board Defs.' Mot. Dismiss [sic] ["Opp'n to Board"] at 6–8 (citing Proctor v. Wells

Fargo Bank, N.A., 289 F.Supp.3d 676, 687–88 (D.Md. 2018))). But the Board Defendants'

Eleventh Amendment immunity is not relevant in this analysis. As the Supreme Court has

explained, while the scope of the Eleventh Amendment was a relevant consideration "in

deciphering congressional intent as to the scope of § 1983," "the scope of the Eleventh

Amendment and the scope of § 1983 are [certainly] separate issues." Will, 491 U.S. at 66–

67. Here, "the issue is not whether the Board is immune from liability under 42 U.S.C.

§ 1983, but whether the Board is a 'person,' and therefore subject to liability." Hanifee v.

Bd. of Educ. of Kent Cnty., No. RDB-09-2381, 2010 WL 723772, at *6 (D.Md. Feb. 24,

2010).

    Indeed, in the Proctor decision relied on by Plaintiffs, this Court held that one

defendant "was a State official. Accordingly, he is not a 'person' subject to suit

under § 1983. I will dismiss the claims against him in his official capacity on this basis

without reaching his Eleventh Amendment argument." Proctor, 289 F.Supp.3d at 690.

Elsewhere, this Court has ruled that while Maryland has "waive[d] immunity for certain

claims once those claims are established against a school board, Plaintiffs must still first

establish a valid claim. Here, they cannot do so because the Board is not a person subject

to § 1983 liability." Schiffbauer v. Schmidt, 95 F.Supp.3d 846, 852 (D.Md. 2015).

Accordingly, Plaintiffs' claims must fail against the Board and the Individual Board

Defendants in their official capacities. The Court thus turns to Plaintiffs' claims against the

Individual Board Defendants in their individual capacities.

ii.        **Fourth and Fourteenth Amendment Claims (Count XIII)**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend. IV. Plaintiffs allege that Defendants deprived them of their "protected

property interest" "when Defendant(s) unreasonably searched [Plaintiffs'] private

residence without consent, valid arrest warrant, or probable cause." (Am. Compl. ¶ 298).[8]

Plaintiffs contend that "[i]t is hard to imagine a greater intrusion into one's home than a

surveillance camera with audio running in one's home without consent for hours on end

every school day." (Opp'n to Board at 9).

For the purposes of the Fourth Amendment, a search occurs "when an expectation

of privacy that society is prepared to recognize as reasonable is infringed." Varriale v.

State, 96 A.3d 793, 796 (Md.Ct.Spec.App. 2014) (quoting United States v. Jacobsen, 466

U.S. 109, 113 (1984)), aff'd, 119 A.3d 824 (Md. 2015). As this Court has explained:

> A search occurs for purposes of the Fourth Amendment when
> the government invades an individual's reasonable expectation
> of privacy. See Smith v. Maryland, 442 U.S. 735, 739–40, 99
> S.Ct. 2577, 61 L.Ed.2d 220 (1979). The Fourth Amendment
> inquiry embraces two questions: "[t]he first is whether the
> individual, by his conduct, has exhibited an actual (subjective)
> expectation of privacy," and the second is "whether the
> individual's subjective expectation of privacy is one that

---

[8] The Court notes as a general matter that Plaintiffs fail throughout the Amended
Complaint to identify which factual allegations support each count, instead merely
incorporating the entirety of the forty-two-page Amended Complaint by reference and
making only conclusory statements within the count. Such unwieldy allegations test the
boundaries of the Federal Rule of Civil Procedure 8(a) requirement that a pleading contain
"a short and plain statement of the claim showing that the pleader is entitled to relief."
Notwithstanding this lack of guidance, the Court will construe the allegations in the
Amended Complaint in the light most favorable to Plaintiffs.

> society is prepared to recognize as reasonable." Id. at 740
> (quoting Katz v. United States, 389 U.S. 347, 361, 88 S.Ct.
> 507, 19 L.Ed.2d 576 (1967)) (internal quotation marks
> omitted).

Hodge v. Stephens, No. AW-12-1988, 2013 WL 398870, at *8 (D.Md. Jan. 31,

2013), aff'd, 533 F.App'x 344 (4th Cir. 2013). Moreover, "[a] search . . . does not violate

the Fourth Amendment if a person consents to it." Varriale, 96 A.3d at 796 (citing

Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

As an initial matter, the Court finds that Plaintiffs do not allege that a Fourth

Amendment search occurred because they fail to allege that Individual Board Defendants

invaded their reasonable expectation of privacy. As Board Defendants correctly note,

"nowhere in the Complaint do Plaintiffs allege that any of the Individual Board Defendants

conducted a search of Plaintiffs' home." (Mem. Supp. Board Defs.' Mot. J. Pleadings

["Board Mot."] at 8, ECF No. 14-1). Plaintiffs never allege that Individual Board

Defendants ever physically entered the Plaintiffs' premises. Plaintiffs do not allege

Individual Board Defendants installed or otherwise manipulated the camera used by

Student Doe to facilitate remote classes.

More importantly, Plaintiffs have not alleged conduct that demonstrated "an actual

(subjective) expectation of privacy," nor have they alleged that their "subjective

expectation of privacy is one that society is prepared to recognize as reasonable."

Smith, 442 U.S. at 740 (internal quotation marks and citations omitted). First, the Court

notes that as set forth in the Complaint, each day, Student Doe, presumably with

Lancaster's assistance, willfully turned his camera on and participated in remote learning.

This behavior is not consistent with a subjective expectation of privacy. Moreover, any such expectation would not be objectively reasonable. There is no reasonable expectation of privacy when one turns his camera on for virtual learning. Nor is there a reasonable expectation that schools provide in-person learning in the midst of a virulent pandemic. In today's digital era—and particularly in light of the exigencies created by the COVID-19 pandemic—online communication and remote audio and video platforms are commonplace and, indeed, necessary to facilitate the ongoing business of the administrative state, including educating our country's children. Accordingly, the Court finds that Plaintiffs have failed to allege that Individual Board Defendants conducted a search as defined by the Fourth Amendment.

The Court further finds that Plaintiffs consented to the search. As set forth above, each day, Student Doe, presumably with Lancaster's assistance, willfully activated his camera and participated in remote classes. Notwithstanding Plaintiffs' bald assertions regarding their lack of consent, the Court rejects the proposition that Plaintiffs have not consented to participating in an activity they daily facilitated and willfully participated in for weeks on end. The Court therefore finds that Plaintiffs consented to any "search" that may have occurred. Accordingly, there can be no basis for liability under the Fourth Amendment.

Later in their brief, Plaintiffs argue that "[t]he false statements and omissions by the Board Defendants violated" the Fourth Amendment. (Opp'n to Board at 10). Plaintiffs cite a Fourth Circuit decision finding that in order for a false statement to violate the Fourth Amendment, it must be material, or "necessary to the finding of probable cause." (Opp'n

to Board at 10 (citing <u>Massey v. Ojaniit</u>, 759 F.3d 343, 357 (4th Cir. 2014))). For liability to accrue pursuant to the <u>Massey</u> decision, "the false statements must have been made deliberately or with a reckless disregard for the truth, which may be proved by showing that when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." <u>Massey</u>, 759 F.3d at 357 (internal quotation marks and citations omitted).

<u>Massey</u> is inapposite. The <u>Massey</u> decision involved an inmate who brought an action against state police officers for alleged false statements that he believed led to the invalid finding of probable cause that led to his arrest, conviction, and incarceration. <u>Id.</u> at 347. Individual Board Defendants are not the police. They have no authority to determine whether probable cause existed to arrest Plaintiffs. Nor have Plaintiffs alleged that false statements by Individual Board Defendants led to a finding of probable cause. Indeed, despite the statements of Individual Board Defendants to the police, County Defendants found no violation of law in Plaintiffs' home and did not arrest Plaintiffs.

For the aforementioned reasons, Board Defendants' Motion will be granted with respect to this claim. Plaintiffs' Fourth and Fourteenth Amendment claims (Count XIII) will be dismissed as to Board Defendants for failure to state a claim.

### iii. Fifth and Fourteenth Amendment Claims (Count XIV)

As set forth above, "[d]ue process claims under the Fifth Amendment apply to federal actors, whereas due process claims under the Fourteenth Amendment apply to state actors." <u>White</u>, 408 F.Supp.3d at 691 (citing <u>Al-Hamdi</u>, 356 F.3d at 573 n.11). Accordingly, Plaintiffs' Fifth Amendment claims are subject to dismissal. The Court will

endeavor, however, to determine whether Plaintiffs have stated a due process claim under the Fourteenth Amendment.

"The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). But "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)). Thus, the Fifth and Fourteenth Amendment prohibit the government "from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). The Fourth Circuit has expanded on this doctrine, holding that "[i]t is clear that 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process,' and that conduct 'intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (quoting Lewis, 523 U.S. at 849).

Plaintiffs shed little light on the substance of this claim within the Amended Complaint. (See Am. Compl. ¶¶ 306–22). Indeed, the allegations contained within the Count are largely conclusory and repetitive of the allegations underlying Plaintiffs' Fourth Amendment claim. For instance, Plaintiffs allege that they were "were afforded less process than was due under law by the Defendant(s)," that they "were not afforded equal protection that was due under law by the Defendant(s)," and that their "right to privacy was violated by the intrusion into their home and from the disclosure of false information to the

public." (Id. ¶¶ 314, 316–17). This Court has held that where a plaintiff's Fifth Amendment Claim is premised "on the same conduct underlying Plaintiffs' [unmeritorious] Fourth Amendment claims," the Fifth Amendment claims are similarly subject to dismissal. Hodge, 2013 WL 398870, at *10. The Court is also under no obligation to credit legal conclusions unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters, 604 F.2d at 847, or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678. Accordingly, Plaintiffs' Fifth and Fourteenth Amendment claims are deficient.

Reviewing the Amended Complaint in the light most favorable to Plaintiffs, they allege that during an unprecedented pandemic, upon seeing what they feared were dangerous weapons in the background of Student Doe's remote video feed, Individual Board Defendants took screenshots of the putative weapons; reported the issue up the chain of command within the school system; contacted Student Doe's father regarding his location and obfuscated the reason for the call; and then contacted the police, informing them that there was a shotgun or rifle in Student Doe's background. Plaintiffs' most damning accusations of Board Defendants' conduct are that they misrepresented their reasons for calling Student Doe's father and misled the BCPD by stating that a policy existed prohibiting the display of weapons and that Student Doe had moved his body to better display the putative weapons. Notwithstanding Plaintiffs' assertions to the contrary, these actions do not come close to the level of "egregious" or "conscience-shocking," as would be necessary to find a substantive due process violation. Any such claim must fail.

In their Opposition, Plaintiffs further assert that "[p]arents have a fundamental Constitutional right to make decisions concerning the care, custody, and control of their children." (Opp'n to Board at 9). That Court agrees. But the Amended Complaint contains no allegations indicating that Individual Board Defendants attempted to circumvent those rights. Indeed, in support of this statement, Plaintiffs cite a number of Fourth Amendment cases and cases involving fabrication of evidence and false statements by law enforcement officers. (Id. at 9–11). These cases are inapposite.

The Court can find no grounds in the Amended Complaint or Plaintiffs' Opposition to allow Plaintiffs' Fifth and Fourteenth Amendment claims to survive Board Defendants' Motion. Accordingly, Board Defendants' Motion will be granted with respect to this claim, and Plaintiffs' Fifth and Fourteenth Amendment claims (Count XIV) will be dismissed as to Board Defendants for failure to state a claim.

### iv.        Second and Fourteenth Amendment Claims (Count XV)

Plaintiffs allege that "Defendant(s) attempted to deprive Plaintiff(s) of their right to bear arms in violation of the Second Amendment, including, but not limited to the possession of firearm and the right to self-defense." (Am. Compl. ¶ 330). Plaintiffs explain in their Opposition that "[Defendants] lied to the Police and Student Doe's father in an attempt to infringe upon Mrs. Lancaster's second amendment right to have a firearm in her house operable for the purpose of immediate self-defense." (Opp'n to Board at 11).

In support of their position, Plaintiffs cite District of Columbia v. Heller, in which the Supreme Court held unconstitutional a District of Columbia "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-

defense." 554 U.S. 570, 635 (2008). But a statewide prohibition on firearms is plainly distinguishable from a concerned individual notifying law enforcement that a child may be in danger due to the apparent presence of firearms. Indeed, the Supreme Court made clear in Heller that "the right secured by the Second Amendment is not unlimited." Id. at 626. Plaintiffs have not identified any precedent for the sweeping expansion of the rights conferred under the Second Amendment and § 1983 they propose.

As with the Fifth Amendment claim, Plaintiffs' conclusory statements are not sufficient to state a claim here. At no point in the Amended Complaint do Plaintiffs levy allegations describing how Individual Board Defendants' actions infringed on their Second Amendment rights. Notwithstanding their assertion in their Opposition, Plaintiffs do not allege in the Amended Complaint that the false statements made by Individual Defendants to the police were made "in an attempt" to infringe upon Plaintiffs' rights. Moreover, even assuming that was the intention, calling the police cannot constitute an infringement upon the right to bear arms. The BCPD is a separate state entity with its own decision-making apparatus and, as occurred here, the BCPD may determine that no infringement upon an individual's right to bear arms is warranted.

Finally, Plaintiffs themselves contend that the "weapons" in Student Doe's background were not firearms but toys. (See Am. Compl. ¶¶ 47–56). Indeed, this position finds some support in this state's local laws. See Anne Arundel County Code §§ 9-1-601, 602 (distinguishing "firearms" from "[b]ows and arrows, BB guns, slingshots, and the like"). The Second Amendment does not protect a citizen's rights to own a toy. For all these reasons, the Court finds that Plaintiffs have failed to levy allegations sufficient to

state a claim for violation of their Second and Fourteenth Amendment rights. Accordingly, Board Defendants' Motion will be granted with respect to this claim, and Plaintiffs' Second and Fourteenth Amendment claims (Count XV) will be dismissed as to Board Defendants for failure to state a claim.

**v.      Board Defendants' Qualified Immunity**

Even if Plaintiffs' constitutional claims against Board Defendants were otherwise meritorious, they would be subject to dismissal under the doctrine of qualified immunity. Qualified immunity "protect[s] government officials performing discretionary functions from civil damage suits 'insofar as [the officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McVey v. Stacy, 157 F.3d 271, 276 (4th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct. See Walker v. Prince George's Cnty., 575 F.3d 426, 429 (4th Cir. 2009).

As set forth above, Board Defendants have not violated a constitutional right of Plaintiffs. However, even if the Court had made the opposite determination, Plaintiffs have failed to establish that the constitutional rights at issue were clearly established at the time of the alleged misconduct. In order for the unlawfulness of an action to be "clearly established" at the time of the defendant's conduct, the law must have been "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful."

District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Ashcroft v. al-Kidd,

563 U.S. 731, 741 (2011)). In other words, "existing law must have placed the

constitutionality of the officer's conduct 'beyond debate.'" Id. The Wesby Court added that

"[t]his demanding standard protects 'all but the plainly incompetent or those who

knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiffs assert that Board Defendants are not entitled to qualified immunity

because their actions were plainly unconstitutional. As Plaintiffs describe it:

> The Board Defendants placed a surveillance system within the
> Lancaster house with video and audio capabilities running
> during the school day and no guarantee that it was turned off
> after hours. If the system was not turned on, Student Doe would
> be counted as absent and his parents would face potential
> criminal prosecution. Neither Student Doe, nor his parents
> consented to this system. The system was open so that anyone
> could access it beyond students, teachers, and authorized staff.
> There was no restriction on who could record or take pictures
> of students.
>
> In designing such a system, the Board Defendants violated 8 of
> its own policies, one State law, and four federal laws regarding
> student privacy. By photographing, videotaping, and recording
> Student Doe and his home, the Board violated 7 of its policies.

(Opp'n to Board at 12). But even granting this uncharitable description of Board

Defendants' actions, the reality is that the overwhelming majority of school districts in this

country implemented a very similar regime in response to the COVID-19 pandemic. If it

were true that the unconstitutionality of such a system were "beyond debate," the Court

presumes it would have been substantially less widespread.

Boiling Plaintiffs' allegations down, they allege that during an unprecedented

pandemic, upon seeing what they feared were dangerous weapons in the background of

24

Student Doe's remote video feed, Individual Board Defendants took screenshots of the putative weapons; reported the issue up the chain of command within the school system; contacted Student Doe's father regarding his location and obfuscated the reason for the call; and then contacted the police, informing them that there was a shotgun or rifle in Student Doe's background. Plaintiffs' most serious accusations concerning Board Defendants' conduct—that they misrepresented their reasons for calling Student Doe's father and misled the BCPD by stating that a policy existed prohibiting the display of weapons and that Student Doe had moved his body to better display the putative weapons—are not actions that a reasonable official in the place of Individual Board Defendants would have known were unconstitutional. Accordingly, Individual Board Defendants are entitled to qualified immunity with respect to these actions. For this reason, too, the Court will grant Board Defendants' Motion with respect to Plaintiffs' constitutional claims.

### b.   County Defendants

#### i.   Extrinsic Materials

County Defendants append several exhibits to their Motion containing correspondence between Officer Peach and various media figures concerning Plaintiffs. Plaintiffs argue that the Court may not consider these materials at the motion to dismiss stage. At bottom, the Court agrees and will not consider the evidence presented by County Defendants.

A court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794

F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

The exhibits attached by County Defendants meet none of the exceptions to the general rule prohibiting a court from considering extra-pleading materials at the motion to dismiss stage. County Defendants appear to imply—without providing much substantive argument—that the emails were either incorporated into the Amended Complaint by reference or were integral to the Amended Complaint. (See County Mot. at 4 n.3). But this is simply not so. Plaintiffs make no reference to the emails in the Amended Complaint. The mere fact that Plaintiffs make allegations relating to the emails is not sufficient to make those emails integral to the Amended Complaint. Accordingly, the Court will not consider the exhibits in deciding County Defendants' Motion.

ii.        **Fourth and Fourteenth Amendment Claims (Count XIII)**

The standard for an unreasonable search and seizure under the Fourth and Fourteenth Amendments is set forth in Section II.B.2.a.i, supra. Plaintiffs allege that unspecified Defendants deprived them of their "protected property interest" "when Defendant(s) unreasonably searched Plaintiff(s) private residence without consent, valid arrest warrant, or probable cause." (Am. Compl. ¶ 298). Plaintiffs do not, however, assert any claims against the police officers who entered and searched their home. (See id. at ¶ 81 n.1 ("Plaintiffs are not currently alleging any wrongdoing against the responding officers."). Plaintiffs further contend that their "right to privacy was violated by the intrusion into their home and from the disclosure of false information to the public." (Id. ¶ 299). Thus, Plaintiffs argue that "[County] Defendants violated this [Fourth and Fourteenth Amendment] right when Defendants publicized false facts about the Plaintiffs and what occurred within the Lancaster home to the news media, and subsequently to the viewing audience." (Pls.' Resp. County Defs.' Mot Dismiss ["Opp'n to County"] at 6, ECF No. 41).

Plaintiffs offer no legal support for the assertion that a government official may violate the Fourth Amendment by making a public statement or communicating information concerning a police report and investigation to a member of the media, nor is the Court aware of any precedent supporting Plaintiffs' position. See Norwood v. Bain, 166 F.3d 243, 247 (4th Cir. 1999) ("Simply put, this amendment guarantees that governmental intrusions into privacy by means of searches or seizures must be reasonable." (emphasis added)); see also Paul v. Davis, 424 U.S. 693, 712–13 (1976) (rejecting

plaintiff's argument that the dissemination of a booking photograph and arrest information to local retail stores violated his right to privacy as guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments); United States v. Calandra, 414 U.S. 338, 354 (1974) (finding that the "wrong condemned [by the Fourth Amendment] is the unjustified governmental invasion [into the privacy of one's person, house, papers, or effects]," but that subsequent questioning based on information obtained by an illegal search or seizure "work[s] no new Fourth Amendment wrong"). Accordingly, County Defendants' Motion will be granted with respect to this claim, and Plaintiffs' Fourth and Fourteenth Amendment claims (Count XIII) will be dismissed as to County Defendants for failure to state a claim.

### iii.        Fifth and Fourteenth Amendment Claims (Count XIV)

As the Court notes above, Plaintiffs shed little light on the substance of their Fifth and Fourteenth Amendment claim within the Amended Complaint. (See Am. Compl. ¶¶ 306–22). Rather, the allegations contained within the Count are largely conclusory and repetitive of the allegations underlying Plaintiffs' Fourth Amendment claim. For instance, Plaintiffs allege that they were "were afforded less process than was due under law by the Defendant(s)," that they "were not afforded equal protection that was due under law by the Defendant(s)," and that their "right to privacy was violated by the intrusion into their home and from the disclosure of false information to the public." (Id. ¶¶ 314, 316–17). This Court has held that where a plaintiff's Fifth Amendment Claim is premised "on the same conduct underlying Plaintiffs' [unmeritorious] Fourth Amendment claims," the Fifth Amendment claims are similarly subject to dismissal. Hodge, 2013 WL 398870, at *10.

Plaintiffs provide little more clarity in their briefing regarding their Fifth and Fourteenth Amendment claim against County Defendants. Instead, the section in Plaintiffs' brief pertaining to their Fifth and Fourteenth Amendment claim is a wide-ranging recitation of various cases that, by and large, have no obvious connection to Plaintiffs' allegations. (See Opp'n to County at 6–7). To the extent Plaintiffs seek to premise their Fifth and Fourteenth Amendment claim on Officer Peach's disclosure of information relating to the police report and investigation, the Supreme Court has held that "the Fifth Amendment protects against 'compelled self-incrimination, not (the disclosure of) private information.'" Fisher v. United States, 425 U.S. 391, 401 (1976) (quoting United States v. Nobles, 422 U.S. 225, 233 n.7 (1975)).

To the extent this Count seeks to state a substantive due process claim, that claim must also fail. The standard for a Fifth and Fourteenth Amendment substantive due process claim is set forth above. At bottom, Plaintiffs allege that Officer Peach falsely informed a media outlet that Student Doe was "playing with [a] toy gun during virtual class," and later attempted to defend her statements without acknowledging the falsity of her original report. While the Court makes no finding concerning whether this behavior was negligent, the Court finds that Plaintiffs have not plausibly alleged that these actions rose to the level of "egregious" or "conscience-shocking," as would be necessary to find a substantive due process violation. Such a claim cannot survive County Defendants' Motion. Accordingly, County Defendants' Motion will be granted with respect to this claim, and Plaintiffs' Fifth and Fourteenth Amendment claims (Count XIV) will be dismissed as to County Defendants for failure to state a claim.

29

### iv.   Second and Fourteenth Amendment Claims (Count XV)

As set forth above, <u>see</u> Section II.B.2.a.ii, <u>supra</u>, Plaintiffs premise their Second and Fourteenth Amendment claim entirely on conclusory statements. The Amended Complaint appears devoid of any specific allegations regarding how County Defendants' actions infringed on their Second Amendment rights. In their Opposition, Plaintiffs assert:

> Defendant Jennifer Peach then provided a false report to a news station and made comments on camera concerning that false report. She made those statement[s] knowing that Officer Thomas was called to the house for the report of a firearm. The inferences from that report and those statements is that Mrs. Lancaster was allowing her son to unlawfully possess a firearm in her house and that her son was unlawfully possessing a firearm.

(Opp'n to County at 4–5). Even assuming this assertion is true, the inference does not result in a constitutional infringement. County Defendants do not violate Plaintiffs' Second Amendment rights by making a public statement that they received and investigated a report concerning a gun. And the Court cannot permit a claim to proceed when no constitutional injury occurred. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (finding that a constitutional claim cannot prevail where "a person has suffered no constitutional injury at the hands of the individual police officer"). Accordingly, County Defendants' Motion will be granted with respect to this claim, and Plaintiffs' Second and Fourteenth Amendment claims (Count XV) will be dismissed as to County Defendants for failure to state a claim.

###### v.        County Defendants' Qualified Immunity

Even if Plaintiffs' constitutional claims against County Defendants were otherwise meritorious, they would be subject to dismissal under the doctrine of qualified immunity. As set forth above, qualified immunity "protect[s] government officials performing discretionary functions from civil damage suits 'insofar as [the officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McVey, 157 F.3d at 276 (quoting Harlow, 457 U.S. at 818).

The Court has found that County Defendants did not violate a constitutional right of Plaintiffs. However, as with Board Defendants, even if the Court had made the opposite determination, Plaintiffs have failed to establish that the constitutional rights at issue were clearly established at the time of the alleged misconduct. In order for the unlawfulness of an action to be "clearly established" at the time of the defendant's conduct, the law must have been "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." Wesby, 138 S.Ct. at 589 (2018) (quoting al-Kidd, 563 U.S. at 741). In other words, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" Id.

Inasmuch as the Court has found that County Defendants' actions did not violate the Constitution, it goes without saying that the unconstitutionality of those actions is not "beyond debate." Plaintiffs have alleged that Officer Peach falsely informed a media outlet that Student Doe was "playing with [a] toy gun during virtual class," and later attempted to defend her statements without acknowledging the falsity of her original report. This behavior may have been wrong. As set forth above, however, it was not plainly

31

unconstitutional. Accordingly, Officer Peach is entitled to qualified immunity. For this reason, too, the Court will grant County Defendants' Motion with respect to Plaintiffs' constitutional claims.

### 3. Jurisdiction

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" under 28 U.S.C. § 1331, as well those "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States" under 28 U.S.C. § 1332(a). Plaintiffs initially filed this lawsuit in the Circuit Court for Baltimore County, Maryland on November 6, 2020. (See ECF No. 15). Defendants removed the case to this Court on December 18, 2020. (ECF No. 1). Defendants premised their removal on federal question jurisdiction, noting Plaintiffs' allegations that Defendants violated their civil rights under the Constitution of the United States. (Id. at 1 (citing 28 U.S.C. § 1331)). Having found that Plaintiffs' constitutional claims are subject to dismissal, the Court must evaluate whether it retains jurisdiction over this case.

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). "[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). Here,

Plaintiffs assert no other causes of action under federal law. (Am. Compl. ¶¶ 185–340). All parties in this case are citizens of or entities organized within the State of Maryland. (See Am. Compl. ¶¶ 1–12). No grounds for this Court's jurisdiction remain. Accordingly, the Court will remand this action back to the Circuit Court for Baltimore County.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Board Defendants' Motion for Judgment on the Pleadings (ECF No. 32) as to Plaintiffs' constitutional claims (Counts XI, XII, XIII, XIV, & XV). The Court will deny the remainder of Board Defendants' Motion without prejudice. The Court will also grant County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 33) as to Plaintiffs' constitutional claims (Counts XI, XII, XIII, XIV, & XV), and to the extent it seeks to dismiss Plaintiffs' claims against the BCPD. The Court will deny the remainder of County Defendants' Motion without prejudice. As no basis for this Court's jurisdiction remains, the Court will remand this action to state court. A separate Order follows.

Entered this 13th day of September, 2021.


_____
/s/
George L. Russell, III
United States District Judge